William H. Trousdale
**TOMPKINS, McGUIRE, WACHENFELD & BARRY LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4070
(973) 622-3000
Attorneys for Plaintiff Integrated Solutions, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

INTEGRATED SOLUTIONS, INC.,

    Plaintiff,

v.

GLOBAL DATA SYSTEMS, INC., and
CALENCE, LLC,

    Defendants.

CIVIL ACTION NO.

---

## COMPLAINT AND REQUEST FOR JURY TRIAL

---

Plaintiff Integrated Solutions, Inc. (hereinafter "Plaintiff" or "Integrated Solutions"), by and through its counsel, as and for its Complaint against Defendant Global Data Systems, Inc. ("GDS") and Defendant Calence, LLC ("Calence") (collectively referred to as "Defendants"), alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

### Nature of the Action

1.     This case involves a breach of the terms of an executed Letter of Intent and the exclusivity provisions contained therein that was entered into by Integrated Solutions and GDS

in connection with a proposed acquisition by Integrated Solutions of certain assets of GDS. GDS exhibited bad faith and violated the terms of the Letter of Intent, most particularly, the "no-shop" provision, when it entered into negotiations with Calence before the agreed upon termination date as set forth in the Letter of Intent had expired. As a result of its improper actions, GDS was motivated to terminate its discussions with Integrated Solutions so that it could pursue a more favorable transaction with Calence. In reliance of the Letter of Intent and the exclusivity provision contained therein, Integrated Solutions expended significant time and money negotiating with GDS and conducting due diligence which it would not have done if not for the fact that GDS unmistakably agreed not to engage in discussions or negotiations with third parties during the transaction period.

## Parties

2. Integrated Solutions is a Delaware corporation having its principal place of business in Watchung, New Jersey.

3. Upon information and belief, GDS is a corporation organized and existing under the laws of Louisiana which has its principal place of business at 500 Dover Boulevard, Suite 200, Lafayette, Louisiana 70503.

4. Upon information and belief, Calence is a corporation organized and existing under the laws of Delaware which has its principal place of business at 1620 W. Fountainhead Parkway #4, Tempe, Arizona 85282.

## Jurisdiction and Venue

5. The Court has subject matter jurisdiction over this matter, pursuant to 28 U.S.C. §1332(a), since there is complete diversity of citizenship amongst the parties and the amount in controversy exceeds the sum of $75,000.

2

6. This Court has personal jurisdiction over GDS because (i) GDS transacts business in New Jersey; and (ii) the causes of action which form the subject of this Complaint arise out of events or transactions that occurred in this district.

7. This Court has personal jurisdiction over Calence because (i) Calence transacts business in New Jersey; (ii) the causes of action which form the subject of this Complaint arise out of events or transactions that occurred in this district; and (iii) and Calence has engaged in tortious conduct in this district and/or caused injury to Plaintiff in this district.

8. Venue is properly placed in the District of New Jersey, pursuant to 28 U.S.C. §1391.

## Factual Allegations

### The Letter of Intent and Term Sheet

9. In May of 2006, Integrated Solutions and GDS entered into negotiations in connection with a proposed acquisition by Integrated Solutions of all the assets and contracts of GDS associated with its operations in Texas and Oklahoma (the "Proposed Acquisition").

10. In connection with the Proposed Acquisition, Integrated Solutions and GDS entered into a Letter of Intent, also consisting of a Term Sheet, which set forth the general terms of the Proposed Acquisition (the "Letter of Intent").

11. Except for the respective obligations of the parties contained within Paragraphs 3, 4 and 5 of the Letter of Intent that related to due diligence, exclusivity and publication of the Proposed Acquisition, respectively, neither the Letter of Intent nor the Term Sheet was intended to be a contract binding the respective parties to the Proposed Acquisition itself.

3

12. Paragraph 3 of the Letter of Intent set forth that, after the execution of the Letter of Intent, GDS would allow Integrated Solutions full access to all of its financial and accounting information, business records and affairs.

13. Paragraph 4 of the Letter of Intent set forth that Integrated Solutions and GDS agreed to proceed diligently and in good faith with a view toward negotiating and executing definitive Purchase Documents with respect to the transaction as contemplated in the Term Sheet.

14. Furthermore, Paragraph 4 of the Letter of Intent, the "no-shop" or "exclusivity" provision, provided that GDS could not, directly or indirectly, solicit, initiate, encourage or entertain any proposals or offers from any other party with respect to the transfer of all or any portion of the securities or assets that are the subject of the Proposed Acquisition prior to the Termination Date.

15. The fact that the Letter of Intent was not binding is precisely why it was so important to Integrated Solutions that GDS would be contractually precluded from attempting to "shop" its assets to other possible bidders while Integrated Solutions was investing significant time and money in an effort to complete the Proposed Acquisition in good faith.

16. The "Termination Date" was defined in the Letter of Intent as the **later** of 180 days following the execution and delivery of the Letter of Intent by all parties, or the joint decision by the parties to terminate the Letter and the negotiations relating thereto.

17. GDS further agreed that if, during such period, it was approached by or received any offers or inquires from any third party, it would inform Integrated Solutions thereof immediately.

4

18. Paragraph 5 of the Letter of Intent set forth that any announcements or publicity releases that related to the Proposed Acquisition be subject to the parties' mutual approval.

19. The Letter of Intent was executed by the parties on May 26, 2006.

20. The Termination Date for the Letter of Intent, i.e. 180 days from its execution, was November 21, 2006.

**Negotiations between Integrated Solutions and GDS**

21. Throughout May, June, July, August and September of 2006, Integrated Solutions and GDS negotiated specific terms of the Proposed Acquisition.

22. On July 14, 2006, GDS advised Integrated Solutions that it had decided to decline Integrated Solutions' offer and pursue another direction.

23. After further negotiations, in the latter part of July 2006, GDS submitted a modified proposal of the Letter of Intent to Integrated Solutions.

24. On July 28, 2006, Integrated Solutions advised GDS that the proposed changes were unacceptable, but that it was prepared to move forward with the transaction and negotiate the definitive agreements on the terms of the Letter of Intent that the parties had previously negotiated.

25. GDS agreed to have its attorney contact Integrated Solutions' attorney so that an agreement acceptable to both parties could be composed and negotiations thereafter continued between Integrated Solutions and GDS and their representatives throughout August of 2006.

26 On September 8, 2006, as a result of GDS's failure to act in good faith in negotiating and executing the terms of the Proposed Acquisition, the transaction was declared cancelled.

5

27. From the time the Letter of Intent was executed until the cancellation of the transaction, Integrated Solutions expended approximately $350,000 in conducting due diligence and in legal expenses relating to the Proposed Acquisition.

28. Integrated Solutions would not have expended this significant sum of money in conducting due diligence were it not for the fact that GDS explicitly committed not to engage in discussions with respect to other transactions or proposed acquisitions up until the Termination Date.

## The Acquisition of GDS by Calence

29. On October 16, 2006, approximately one month after the transaction between GDS and Integrated Solutions was declared cancelled, a press release was published that announced the execution of an agreement for Calence to acquire the Texas based business of GDS.

30. The business and assets acquired by Calence were the same or similar to that which Integrated Solutions had previously entered into the Letter of Intent and Term Sheet to purchase from GDS.

31. Negotiations between GDS and Calence relating to Calence's purchase of the Texas based business of GDS occurred prior to the Termination Date.

32. During the negotiations between GDS and Calence (relating to the purchase of the Texas based business of GDS), GDS and Calence had discussions concerning whether GDS was legally precluded from pursuing another transaction based upon an exclusivity agreement.

33. Prior to the closing of Calence's purchase of the Texas based business of GDS, the CEO of Integrated Solutions expressly informed the CEO of Calence of the existence of the LOI, and specifically, of the "no-shop" provision contained therein, that precluded GDS from

soliciting, initiating, or encouraging any proposals from third parties with respect to the transfer of all or any portion of the securities or assets that were the subject of the Proposed Acquisition prior to the Termination Date

34. GDS did not advise Integrated Solutions at any point that it solicited, initiated, encouraged and/or entertained any proposals or offers from any other party with respect to the transfer of all or any portion of the securities or assets that were the subject of the Proposed Acquisition.

35. As a result of these improper negotiations and actions on the part of GDS, GDS was motivated to terminate its discussions with Integrated Solutions so that it could pursue another transaction with Calence which it deemed more favorable to it.

## COUNT I: BREACH OF CONTRACT BY GDS

36. Integrated Solutions hereby restates, realleges, and incorporates by reference Paragraphs 1 through 35, as though fully set forth herein.

37. Integrated Solutions fully performed all of its obligations pursuant to the Letter of Intent and Term Sheet.

38. In breach of the Letter of Intent, GDS failed to act in good faith in negotiating and executing the terms of the Proposed Acquisition.

39. In breach of the Letter of Intent and unbeknownst to Plaintiff, GDS entered into discussions and negotiations with Calence prior to the Termination Date of the Letter of Intent for the purchase of the securities and/or assets that were the subject of the Proposed Acquisition.

40. GDS did not advise Integrated Solutions at any point that any third party solicited, initiated, or encouraged any proposals or offers from it with respect to the transfer of all or any

portion of the securities or assets which were the subject of the Proposed Acquisition or that GDS entertained any such proposals or offers, in breach of the Letter of Intent.

41. Integrated Solutions has been damaged by GDS's breach in an amount in excess of $75,000 to be proven at trial. Integrated Solutions' damages include all of the amounts it expended in connection with its due diligence, interest on said amounts, and all expenses incurred in recovering those payments, including attorneys' fees.

### COUNT II: BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING BY GDS

42. Integrated Solutions hereby restates, realleges, and incorporates by reference Paragraphs 1 through 41 as though fully set forth herein.

43. GDS's entry into the Letter of Intent with Integrated Solutions gave rise to the implied duty of good faith and fair dealing.

44. GDS's failure to abide by the terms of the Letter of Intent, specifically, the no-shop clause, constitutes a breach of the implied duty of good faith and fair dealing.

45. Integrated Solutions has been damaged by GDS's breach in an amount in excess of $75,000 to be proven at trial. Integrated Solutions' damages include all of the amounts incurred in connection with its due diligence, interest on said amounts, and all other expenses incurred in recovering those payments, including attorneys' fees.

### COUNT III: AIDING AND ABETTING BREACH OF CONTRACT BY CALENCE

46. Integrated Solutions hereby restates, realleges, and incorporates by reference Paragraphs 1 through 45, as though fully set forth herein.

47. Upon information and belief, Calence knowingly aided and abetted, and acted in concert with GDS, in soliciting, initiating and/or encouraging proposals or offers to it and in conducting discussions and negotiations with it, with respect to the transfer of all or any portion

8

of the securities or assets which were the subject of the Proposed Acquisition in breach of the Letter of Intent, specifically, the no-shop provision.

48. Defendants' negotiations relating to the acquisition of the business and assets of GDS by Calence were intended to assist GDS in evading its duties and obligations to Integrated Solutions as set forth in the Letter of Intent and Term Sheet.

49. Integrated Solutions has been damaged by Calence's actions in an amount in excess of $75,000 to be proven at trial. Integrated Solutions' damages include all of the amounts it expended in connection with its due diligence, interest on said amounts, and all expenses incurred in recovering those payments, including attorneys' fees.

### COUNT IV: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS BY CALENCE

50. Integrated Solutions hereby restates, realleges, and incorporates by reference Paragraphs 1 through 49, as though fully set forth herein.

51. Upon information and belief, Calence knew of the Letter of Intent and specifically, the no-shop provision, that GDS had entered into with Integrated Solutions at the time of Calence's discussions and negotiations with GDS relating to its acquisition of the business and assets of GDS.

52. Upon information and belief, Calence unjustifiably entered into discussions and negotiations with GDS with the intention of encouraging GDS to negotiate with it in violation of the Letter of Intent, specifically, the no-shop provision, for the purpose of injuring and harming Integrated Solutions.

53. Integrated Solutions has been damaged by Calence's actions in an amount in excess of $75,000 to be proven at trial. Integrated Solutions' damages include all of the amounts

9

it expended in connection with its due diligence, interest on said amounts, and all expenses incurred in recovering those payments, including attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in its favor and that the relief hereinafter requested be granted against Defendants GDS and Calence and:

  a. That Plaintiff be awarded compensatory damages in accordance with proof at the time of trial, but in an amount in excess of $75,000;

  b. That Plaintiff be awarded interest, including pre-judgment and post-judgment interest, on all the amounts due, to the full extent permitted by law;

  c. That Plaintiff be awarded all expenses, including attorneys' fees, incurred in seeking payment from the Defendants;

  d. That Plaintiff be awarded such other and further relief as the Court deems just and proper.

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests trial by jury as to each and every count and claim for which a jury trial is available under applicable law.

Respectfully submitted,

TOMPKINS, McGUIRE WACHELFELD & BARRY, LLP
Attorneys for Plaintiff Integrated Solutions, Inc.

By: *William Trousdale*
William H. Trousdale
TOMPKINS, MCGUIRE, WACHENFELD & BARRY LLP
Four Gateway Center
100 Mulberry Street, Suite 5
Newark, New Jersey 07102-4070
(973) 623-3000

Date: January 4, 2007